UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

AMAYLA THURMOND,

               Plaintiff,

    v.

MARGARET BOWMAN & WILFRED TOMBS,

               Defendants.

—————————————————————

**DECISION AND ORDER**

6:14-CV-06465

## <u>INTRODUCTION</u>

Plaintiff Amayla Thurmond (hereinafter "Plaintiff") commenced this action on August 11, 2014, alleging discrimination in the provision of housing based on her family status and gender, purportedly in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601 *et seq.* (hereinafter "FHA") when defendant Wilfred Toombs (hereinafter "Toombs")[1] purportedly refused to show Plaintiff a rental property because she had two minor children. (Dkt. 1). Plaintiff alleges that Toombs manages the property owned by defendant Margaret Bowman (hereinafter "Bowman"). (*Id.* ¶ 14).

Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that Plaintiff lacks standing. (Dkt. 41). Also before the Court is Plaintiff's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. (Dkt. 20). For the reasons that follow,

---

[1] The caption of the complaint identifies Wilfred "Tombs" as a defendant, although it appears as though the proper spelling is "Toombs."

Defendants' motion to dismiss is denied.  In addition, summary judgment is granted in favor of Plaintiff on the issue of liability for discrimination based on familial status in violation of 42 U.S.C. §§ 3604(a) and (c), and is denied in all other respects.[2]

## PROCEDURAL BACKGROUND

Plaintiff filed her complaint on August 11, 2014.  (Dkt. 1).  Plaintiff's complaint specifically claims violations of §§ 804(a) and (c) of the FHA, as codified at 42 U.S.C. §§ 3604(a) and (c).  (*Id.* at 5).  Plaintiff alleges that she was denied housing due to discrimination based on her familial status, and that she suffered injuries of homelessness, emotional distress, and anxiety as a result of the discrimination.  (*Id.* ¶ 27). In September 2014, each defendant filed an answer to Plaintiff's complaint.  (Dkt. 4; Dkt. 5).  The case then proceeded to discovery.  (Dkt. 11).

On April 17, 2015, Plaintiff filed the pending summary judgment motion.  (Dkt. 20).  In support of her motion, Plaintiff submitted, *inter alia*, a Statement of Material Facts Not in Dispute (Dkt. 21) and an affirmation by her attorney, attached to which are documents from an administrative proceeding before the Geneva Human Rights Commission (hereinafter "GHRC") that include sworn statements of the parties (Dkt. 22). Defendants responded in opposition to the summary judgment motion; their submissions included, *inter alia*, affidavits from Toombs and Bowman.  (Dkt. 27-2; Dkt. 27-3).

---

[2]     Plaintiff's notice of motion does not limit the summary judgment sought to only liability based on family status, although her motion papers focus only on that issue. (Dkt. 20).  Thus, to the extent that Plaintiff sought summary judgment on the issue of damages and/or gender discrimination as alleged in the complaint, the motion is denied.

On June 16, 2016, Defendants moved to dismiss pursuant to Rule 12(b)(1), alleging that Plaintiff lacks standing. (Dkt. 41; Dkt. 65). Plaintiff opposes the motion. (Dkt. 47).

On September 20, 2016, the parties appeared before the undersigned at a motion hearing regarding the motion for summary judgment and motion to dismiss. (Dkt. 112). The Court reserved decision.

## FACTUAL BACKGROUND

According to Plaintiff's Statement of Material Facts Not in Dispute,[3] Plaintiff is the mother of two minor children. (Dkt. 21 ¶ 1). She sought to rent an apartment at 11 Union Street in Geneva, New York. (*Id.* ¶ 2). That apartment was owned by Defendant Bowman and managed by Defendant Toombs. (*Id.*). When Plaintiff called to inquire about the vacancy at the Union Street apartment, she contends that Defendant Toombs told her that he would not rent to her because of the presence of children in her household. (*Id.* ¶ 3).

As discussed, Plaintiff's evidence in support of her summary judgment motion consists of documents from a proceeding before the GHRC. (*Id.* ¶¶ 1-3 (citing (Dkt. 22 at 5-15)). Those documents reveal that in February 2013, Plaintiff filed a charge with the GHRC (hereinafter "GHRC Charge"), alleging the same discrimination at issue in this case. (Dkt. 22 at 6-7). The GHRC Charge is signed and sworn to by Plaintiff (*id.* at 7), and its allegations are summarized below.

---

[3]   As discussed *infra* at section II.B of the Discussion portion of this Decision and Order, the factual allegations within Plaintiff's Statement of Material Facts Not in Dispute are considered admitted.

Plaintiff has two minor children. (*Id.* at 6 ¶ 1). In December 2012, she saw a newspaper advertisement for a vacancy at the Union Street Apartment, which was owned by Bowman and managed locally by Toombs. (*Id.* at 6 ¶¶ 2-5). She called Toombs and told him that she was responding to the newspaper advertisement. (*Id.* at 6 ¶ 6). Toombs told Plaintiff the apartment was available, and then the following exchange between Toombs and Plaintiff occurred:

(a) Question: "How many people will be living with you?"
[Plaintiff's] response: "Three—myself and my two daughters."

(b) Question: "How old are your daughters?"
[Plaintiff's] response: "They are seven (7) and one (1)."

(*Id.* at 6 ¶ 7). Plaintiff next alleged: "After divulging the ages of my children, the man on the phone abruptly cut me off and said, 'I will not be able to rent to you because of your two small children. There is a disabled person living in the unit below and children that age will drive [her] nuts.'" (*Id.* at 7 ¶ 8).

The Fair Housing Enforcement Project of Legal Assistance of Western New York then conducted two tests on the Union Street Apartment. (*Id.* at 7 ¶ 10). Toombs did not permit the first tester, posing as a single mother of two minor children, to see the apartment after the tester revealed the ages of her children, stating, *inter alia*, that "they do not rent upstairs apartments to people that have kids . . . ." (*Id.* at 7 ¶¶ 11-13). Toombs permitted a second tester, who posed as a married person with no children, to inspect the unit and told that tester that the apartment was available. (*Id.* at 7 ¶ 14).

In response to Plaintiff's GHRC Charge, Toombs submitted an unsworn statement. (Dkt. 22 at 9-11). In the statement, he apologized "for any violation of housing laws,"

although he did not directly admit to violating the law. (*Id.* at 9 ¶ B).  Instead, he expressed his concerns about leasing the property to families with children, describing past incidents in which the apartment's low-situated window and steep stairs were hazardous to children. (*Id.* at 9-10 ¶¶ E-M).  He also stated in this unsworn statement that the tenant in the downstairs apartment is a "handicapped senior citizen" and expressed concern for her "peaceful enjoyment of her apartment." (*Id.* at 10 ¶ N).  He does not indicate whether he refused to lease or to show the apartment to Plaintiff. Instead, in Toombs' unsworn statement, he states as follows:  "At the time of our telephone conversation, [Plaintiff] hung up after I spoke of [the tenant] downstairs, but before I got to speak of my worry over the safety of young children in the apartment." (*Id.* at 10 ¶ P).

Defendants submitted an Answer (hereinafter "GHRC Answer") to Plaintiff's GHRC Charge. (Dkt. 22 at 13-14).  The GHRC Answer contained the notarized signatures of both Toombs and Bowman. (Dkt. 22 at 13-14).  The GHRC Answer contains the following relevant responses to Plaintiff's GHRC Charge:

- Defendants admit that Toombs asked Plaintiff how many people will live with her, and how old Plaintiff's daughters were, in response to paragraph 7 of the Charge (Dkt. 22 at 6 ¶ 7; Dkt. 22 at 13 ¶ 3).

- Paragraph 8 of Plaintiff's Charge alleged:  "After divulging the ages of my children, the man on the phone abruptly cut me off and said, 'I will not be able to rent to you because of your two small children.  There is a disabled person living in the unit below and children that age will drive them nuts.'" (Dkt. 22 at 7 ¶ 8).  Defendants responded:  "Admit the allegations of Paragraph 8 . . . insofar as it is alleged that the quoted portion, or words substantially to that effect were addressed during the said telephone conversation (and Respondents acknowledge that the words were spoken by Respondent Toombs), and deny knowledge or

information sufficient to form a belief as to the truth of the rest of the allegations of Paragraph 8." (Dkt. 22 at 13-14 ¶ 4).

- Defendants also admit that Toombs did not permit a fair housing tester, posing as a single mother with two minor children, to see the apartment after he inquired about the ages of the tester's children. (Dkt. 22 at 7 ¶¶ 11-13; Dkt. 22 at 14 ¶¶ 5-7).

- Defendants also admit that Toombs permitted a second fair housing tester, posing as a married person without children, to see the apartment and told that tester that the apartment was available. (Dkt. 22 at 7 ¶ 14; Dkt. 22 at 14 ¶ 8).

In an affidavit submitted to this Court in opposition to the summary judgment motion, Toombs described the telephone conversation with Plaintiff as follows:

> I received a call from [Plaintiff] . . . who said she lived at the Woodlands regarding an apartment being rented.  This person asked about the apartment that has some concerns regarding children because the stairs are very steep and the window seals are low.  We have always rented that apartment to families with children but want to make sure that the renters know any safety issues as well as that a handicapped neighbor lives downstairs that will complain if there is a lot of noise.
>
> It makes it hard to keep tenants in the upstairs apartment.  I asked her if she had any children and she said she had two girls.  I began to tell her of the safety issues involving children so that she would know what to expect when she came to see the apartment.  She never asked to see the apartment and instead hung up on me before I had even told her all the safety concerns.  I am a little forgetful in my old age but I am almost certain that she never asked to see the apartment and <u>I never told her she could not see it</u>.

(Dkt. 27-3 (emphasis added)).

Plaintiff has also submitted a copy of a cover letter from attorney Martin E. Eades regarding the GHRC proceedings; in the letter, Eades, on behalf of Bowman and

Toombs, sent to the GHRC the verified Answer, along with conciliation election forms. (Dkt. 35 at 5).

## DISCUSSION

### I.    Defendants' Motion to Dismiss for Lack of Standing

Defendants move to dismiss, contending that Plaintiff lacks standing to bring a FHA action because of her alleged criminal record and prior bad acts, which, according to Defendants, render her ineligible to rent under 42 U.S.C. §§ 13603(b)(B) and 13661. (Dkt. 41 ¶¶ 6-12).  Defendants contend, in essence, that the property at issue is leased to individuals who received federal housing assistance, and as a result, Defendants may refuse to lease the property to Plaintiff due to her alleged past criminal activity.  (*See id.*).

Plaintiff opposes Defendants' motion, arguing that the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), prohibits Defendants from relying upon after-acquired evidence of behavior that could have justified Defendants' actions had it been known earlier, in an effort to prevent a finding of liability.  (Dkt. 47 ¶¶ 6-7).  In other words, because Defendants were not aware of the alleged criminal conduct when they allegedly refused to show Plaintiff the apartment or lease the apartment to her, they cannot now rely on that information to justify their conduct after-the-fact.  (*See id.*).  Moreover, Plaintiff argues that Defendants do not meet the definition of a provider of "federally assisted housing" set forth in 42 U.S.C. § 13641, and as a result, the statutory provisions that allow screening of applications based on past criminal activity are inapplicable to this case.  (*Id.* ¶¶ 8-11).

To survive Defendant's Rule 12(b)(1) motion to dismiss for lack of standing, Plaintiff "must allege facts that affirmatively and plausibly suggest that [she] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "Standing under the [FHA] is as broad as Article III permits." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016). The FHA confers standing to challenge discriminatory housing practices on any "aggrieved person," defined as anyone who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995) (citing 42 U.S.C. §§ 3602(l), 3613(a)(1)(A)). To establish standing, an FHA plaintiff must allege "'injury in fact' within the meaning of Article III of the Constitution, that is, that [the plaintiff must] allege 'distinct and palpable injuries that are 'fairly traceable' to [defendants'] actions.'" *Id.* at 424-25 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 375-76 (1982)).

Plaintiff's complaint alleges that she was denied housing due to discrimination based on her familial status, and that she suffered injuries of homelessness, emotional distress, and anxiety as a result of the discrimination. (Dkt. 1 ¶ 27). The alleged denial of housing constitutes an "injury in fact" that is "fairly traceable" to Defendants' alleged actions. (*See id.*). Accordingly, Plaintiff has standing to bring this action under the FHA. *See LeBlanc-Sternberg*, 67 F.3d at 424-25.

Defendants' standing challenges are unpersuasive for three reasons. First, Defendants' challenges are wholly unconnected to the FHA standing requirements; that

is, Defendants fail to link Plaintiff's purported ineligibility to receive federally assisted housing with the issue of whether she is an aggrieved person under the FHA. Second, Plaintiff's complaint lacks any allegation that Plaintiff received federal housing assistance, and so the relevance of § 13661—which sets forth the screening provisions for applications for federally assisted housing—is not apparent. (*See generally* Dkt. 1).

Third, even assuming that those statutory screening provisions were applicable in this case, the Court finds that the rationale of *McKennon* applies, and as a result, Defendants cannot use their after-the-fact knowledge of Plaintiff's alleged criminal history to assert that she was ineligible to rent the apartment. In *McKennon*, which concerned a discharge of employment in violation of the Age Discrimination in Employment Act ("ADEA"), the Supreme Court held that "[i]t would not accord with th[e] scheme [of anti-discrimination lawsuits] if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." 513 U.S. at 358. The Supreme Court further noted that "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *Id.* at 360. This Court agrees with other courts that have held that the rationale of *McKennon* applies to "the FHA, which—like the ADEA—reflect[s] Congress's authorization of 'broad equitable relief to serve important national policies.'" *Ramirez v. Greenpoint Mortg. Funding, Inc.*, 268 F.R.D. 627, 638 (N.D. Cal. 2010) (quoting *McKennon*, 513 U.S. at 360); *see also Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 631-32 (S.D.N.Y. 2011) (collecting cases applying the rationale of *McKennon* to FHA cases).

Accordingly, the Court denies Defendants' motion to dismiss for lack of standing.

## II.   Plaintiff's Motion for Summary Judgment

### A.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

### B.   The Summary Judgment Evidence

In support of her summary judgment motion, Plaintiff submitted a Statement of Material Facts Not in Dispute (Dkt. 21), an affirmation by her attorney, to which Plaintiff attached the three previously-referenced documents from the GHRC proceedings (Dkt.

22), and a memorandum of law (Dkt. 25).  Defendants' response in opposition consisted of their attorney's declaration, a memorandum of law, Toombs' affidavit, an affidavit from Bowman, and a letter concerning Bowman's husband's health, written by his doctor.  (Dkt. 27 to 27-4).

Local Rule of Civil Procedure 56(a)(2) states that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." *See also* Fed. R. Civ. P. 56(e)(2) (when a party fails to properly support an assertion of fact or fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).  Defendants failed to submit a response to Plaintiff's Statement of Material Facts Not in Dispute that complies with Local Rule 56(a)(2); that is, Defendants' opposition does not include "a response to each numbered paragraph  in . . . [Plaintiff's] statement, in correspondingly numbered paragraphs . . . containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."  Local R. Civ. P. 56(a)(2).

The Court has discretion to excuse a party's failure to file a statement of facts, and the Second Circuit Court of Appeals has indicated that a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001).  Here, each factual assertion within Plaintiff's Statement of Material Facts Not in Dispute is supported by a citation to the exhibits attached to her attorney's affirmation, and those exhibits are

sufficient to prove those factual assertions.[4]  (Dkt. 21; Dkt. 22 at 5-15).  Moreover, the citations to Plaintiff's Statement of Material Facts Not in Dispute rely on the prior sworn statements of Defendants in the proceedings before the GHRC.  In other words, not only have Defendants failed to respond to Plaintiff's Statement of Material Facts Not in Dispute in accordance with this Court's Local Rule 56(a)(2), but also they have admitted the truth of the facts set forth therein in prior sworn statements.  Accordingly, the Court deems that the factual allegations of Plaintiff's Statement of Material Facts Not in Dispute are admitted.  *See* Fed. R. Civ. P. 56(e)(2); *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir. 1998).

## C.    Analysis

Although the Court deems that Plaintiff's factual assertions are admitted, the conclusions Plaintiff draws from those assertions are not.  Thus, the Court now examines whether the record evidence warrants summary judgment in Plaintiff's favor on her § 3604(a) and § 3604(c) claims.[5]

---

[4]    Defendants argue that Plaintiff's summary judgment motion is supported only by her attorney's affirmation, and that the affirmation fails to comply with Federal Rule of Civil Procedure 56(e).  (Dkt. 27-4 at 7).  Defendants' argument is meritless.  Plaintiff has supported her factual assertions with citations not to her attorney's affirmation, but to documents in the record, namely, the GHRC materials, which includes the parties' sworn statements.  (Dkt. 21 ¶¶ 1-3).

[5]    Under 42 U.S.C. § 3603(a), the provisions of § 3604 apply to all dwellings unless an exemption under 42 U.S.C. § 3603(b) applies.  *See* 42 U.S.C. § 3603(a)(2).  The exemptions within § 3603(b) are affirmative defenses.  *See United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) ("Courts have consistently characterized exemptions to the FHA as affirmative defenses.").  Defendants have not raised the

affirmative defense: they advance no argument, in opposition to summary judgment or in their answers, that the apartment at issue and they were not covered by the FHA.  In any event, even if they had advanced such an argument, it is clear that no exemption under § 3603(b) applies.  Section 3603(b) states as follows:

> "Nothing in section 3604 of this title (other than subsection (c)) shall apply to--
>
> (1) any single-family house . . . rented by an owner . . . *provided* . . . [t]hat . . . the . . . rental of any such single-family house shall be excepted from the application of this subchapter only if such house is . . . rented (A) without the use in any manner of the . . . rental services of any real estate broker, agent, or salesman, or of such . . . services of any person in the business of selling or renting dwellings . . . , or
>
> (2) rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.

42 U.S.C. § 3603(b).  Based on the plain language of the statute, it is clear that § 3604(c) of the FHA applies even under the exempted circumstances set forth in § 3603(b).  *See id.* With respect to Plaintiff's § 3604(a) claim, § 3603(b)(1) does not apply for two reasons. First, according to Defendants, the apartment at issue is within a property containing at least two units (the one Plaintiff sought to rent, and another occupied by the downstairs tenant); accordingly, it is not a single-family house.  (Dkt. 22 at 9 ¶ E; Dkt. 22 at 10 ¶ N). Second, even assuming the property at issue is a single-family house, the § 3603(b)(1) exception does not apply because the record shows that Bowman rented the home with the use of an agent, Toombs.  (Dkt. 22 at 6 ¶¶ 4-5; Dkt. 22 at 13 ¶ 1); *see Singleton v. Gendason*, 545 F.2d 1224, 1227 (9th Cir. 1976) ("If [a single-family house owner] seeks the help of others who furnish any rental service for compensation, [the owner] . . . forfeits his exemption.").  Nor does § 3603(b)(2) apply; assuming the apartment is a unit in a dwelling "containing living quarters occupied or intended to be occupied by no more than four families living independently of each other," the record shows that Bowman, the owner, resides in Florida, so she does not "actually maintain[] and occup[y] one of such living quarters as [her] residence."  *See* § 3604(b)(2); (Dkt. 22 at 11 ¶ R; Dkt. 22 at 6 ¶¶ 4-5; Dkt. 22 at 13 ¶ 1).

Because Defendants have failed to assert this defense, and based upon the language of 42 U.S.C. § 3603 and the record in this case, the Court finds that the prohibitions of §§ 3604(a) and (c) plainly apply to this case.

Plaintiff asserts that summary judgment is warranted on both of those claims based on the telephone conversation that she had with Toombs regarding the Union Street Apartment. (Dkt. 23). Plaintiff argues that Defendants conceded that they violated the FHA during the administrative proceeding before the GHRC.[6] (*Id.* at 1). Specifically, Plaintiff argues that Toombs admitted that he refused to show the apartment to Plaintiff because of her children, and that his excuses, based upon concerns for the children's safety and impact on the disabled elderly tenant living below the upper-level apartment, did not constitute viable defenses to a claim for violation of the FHA. (*Id.* at 2-3).

Defendants oppose the summary judgment motion, contending that disputed issues of fact exist as to whether Toombs refused to show the property to Plaintiff. (Dkt. 27 at 2 ¶¶ 8-9; Dkt. 27-4 at 5). Defendants concede that Toombs was "'questioning' putting young children in the apartment," but they maintain that "his intended meaning was that when children are involved in renting at that address, he takes time to further explain the

---

[6]    Although neither party raises the issue, the record supports the conclusion that Bowman is vicariously liable for the actions of Toombs. "Though the FHA does not mention vicarious liability, 'it is well established that the Act provides for vicarious liability' because 'when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.'" *United States v. Hylton*, 590 F. App'x 13, 17 (2d Cir. 2014) (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)). During the GHRC proceedings, Toombs and Bowman admitted Plaintiff's allegations that Bowman owed the Union Street Apartment and that Toombs was the local manager of that apartment. (Dkt. 22 at 6 ¶¶ 4-5; Dkt. 22 at 13 ¶ 1). Accordingly, because Bowman engaged Toombs as the manager of the Union Street Apartment, she is vicariously liable for his actions in violation of the FHA. *See Hylton*, 590 F. App'x at 17; *see also Glover v. Jones*, 522 F. Supp. 2d 496, 506 (W.D.N.Y. 2007) ("It is clear that under the FHA, owners of real estate may be held vicariously liable for discriminatory acts by their agents and employees.").

property." (Dkt. 27-4 at 5). Additionally, Defendants contest the meaning of their

admission to Plaintiff's GHRC Charge, contending that:

> [T]he pro se answer was merely an acknowledgement that Defendant
> Tombs [sic] had a discussion with Plaintiff Thurmond. It was not an
> agreement of what was specifically said. In other words, it was an
> admission that a conversation took place, but a denial that he stated "I will
> not be able to rent to you because of your two small children."

(*Id.*). Defendants also contend that during the time that the GHRC Answer was

submitted to the GHRC, Bowman's husband was dying and she was in great distress, and

Plaintiff's counsel unduly pressured her to file an answer to the GHRC Charge. (Dkt. 27-

2). Defendants also argue that Toombs is "an old and uneducated man, and did not

understand the legalese employed . . . [or] what he was signing." (Dkt. 27-4 at 6).

Plaintiff's counsel denies the allegation that she pressured Bowman to answer the

GHRC charge and also denies even being involved in the administrative proceedings

before the GHRC. (Dkt. 35 ¶ 9). Plaintiff also argues that the GHRC Answer was not

filed *pro se* and, instead, Defendants were represented by attorney Eades during those

proceedings. (*Id.* at 5).

### i.    Plaintiff's Claim under § 3604(a)

Section 3604(a) makes it unlawful "to refuse to sell or rent after the making of a

bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make

unavailable or deny, a dwelling to any person because of . . . familial status . . . ." 42

U.S.C. § 3604(a). The statute therefore prohibits specific conduct: refusing to sell or rent

after the making of a bona fide offer, and refusing to negotiate for a sale or rental of a

dwelling. *See id.* It also includes a broad prohibition against otherwise making a

dwelling unavailable or denying it to a person.  That provision "has been construed to reach every practice which has the effect of making housing more difficult to obtain on prohibited grounds." *See United States v. Yonkers Bd. of Educ.*, 624 F. Supp. 1276, 1291 n.9 (S.D.N.Y. 1985), *aff'd*, 837 F.2d 1181 (2d Cir. 1987) (quotation omitted).  Indeed, in holding that disparate impact claims are cognizable under the "otherwise make unavailable" provision of § 3604(a), the Supreme Court explained that the provision "serve[s] as a catchall phrase[] looking to consequences, not intent." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2519 (2015).

"A plaintiff can make out a claim of discrimination either 'on a theory of disparate impact or one of disparate treatment.'" *Fair Housing in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 366 (2d Cir. 2003).  Here, Plaintiff asserts a claim of disparate treatment, that is, a claim of intentional discrimination.  *See Khalil v. Farash Corp.*, 452 F. Supp. 2d 203, 207 (W.D.N.Y. 2006) (distinguishing a claim for intentional discrimination versus a claim that a facially neutral rule had a disproportionate impact on a protected group); *see also* (Dkt. 1 ¶ 28).  Generally, a claim of intentional discrimination is analyzed under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Khalil*, 452 F. Supp. 2d at 207 (citing *Reg'l Econ. Cmty. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002)).  But where a plaintiff presents direct evidence of discrimination, the burden-shifting analysis is inapplicable.  *See United States v. Hylton*, 944 F. Supp. 2d 176, 187 (D. Conn. 2013), *aff'd*, 590 F. App'x 13 (2d Cir. 2014).  "Direct evidence of discriminatory treatment is

evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse . . . action." *Id.*  "Once a plaintiff produces direct evidence of discrimination, the burden of proof shifts to the defendants to show that they would have made the same decision regardless of discriminatory animus." *Id.*

After reviewing all the record evidence and resolving any ambiguities and reasonable inferences in the Defendants' favor, the Court finds that Plaintiff is entitled to summary judgment on her claim under § 3604(a).  Plaintiff has presented direct evidence that Toombs discriminated against her because of her familial status in the form of Toombs' admission that he told Plaintiff that he would "not be able to rent to [her] because of [her] two small children.  There is a disabled person living in the unit below and children that age will drive them nuts."  (Dkt. 22 at 7 ¶ 8; Dkt. 22 at 13-14 ¶ 8).  In making that statement, Toombs refused to negotiate for the rental of the Union Street Apartment, or, in the very least, adversely affected the availability of that housing to Plaintiff because she has children.  *See* § 3604(a).  Defendants assert that there is a dispute as to whether Toombs told Plaintiff she could not *see* the apartment.  (Dkt. 27-4; Dkt. 27-3).  Even crediting the assertion that he did not tell her that she could not see the apartment, making the statement that he *would not be able to rent to her* was enough to fall within the broad prohibitions of § 3604(a) because that statement made the apartment unavailable to Plaintiff.  It is difficult to conceive that the statement would have any other consequence.

Contrary to Defendants' arguments, there is no genuine dispute that Toombs made the statement that he would not be able to rent to Plaintiff because of her children. In the signed and sworn GHRC Answer, Defendants admitted that those words were said. (Dkt. 22 ¶ 4). It appears clear that Defendants were represented by counsel when the GHRC Answer was filed, and it was not filed *pro se*. (Dkt. 35 at 5).

In addition, nothing in Toombs' unsworn statement or his affidavit filed in this Court refutes or is inconsistent with his making the statement that he would not rent to Plaintiff because of her children. (*See* Dkt. 22 at 9-10; Dkt. 27-3). That is, the unsworn statement asserts only that Plaintiff "hung up after [Toombs] spoke of [the tenant] downstairs, but before [Toombs] got to speak of [his] worry over the safety of young children in the apartment," (Dkt. 22 at 10 ¶ P), and his affidavit similarly asserts that Plaintiff never asked to see the apartment and hung up before he told her all of his safety concerns (Dkt. 27-3). Neither of those assertions creates a dispute about his making the statement that he would not rent to her because of her children. But even to the extent that Toombs' affidavit attempts to contradict whether that statement was made, Defendants cannot now create an issue of fact by submitting an affidavit that contradicts their prior sworn statements. *Cf. Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) ("The 'sham issue of fact' doctrine prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." (quotation omitted)); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's

affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.").

Accordingly, the assertions that Toombs sets forth in the affidavit he filed in this Court, to the extent they attempt to contradict his prior sworn statement to the GHRC, do not create a genuine issue for trial.  This conclusion is only further buttressed by the fact that Defendants failed to respond to Plaintiff's Statement of Material Facts Not in Dispute, which states that Toombs advised Plaintiff "that he would not rent to her because of the presence of children in her household." (Dkt. 21 ¶ 3).

Defendants suggest that their refusal to rent to Plaintiff was motivated by Toombs' concerns for the safety of Plaintiff's children or for the peace and quiet of the downstairs tenant.  (Dkt. 27-4 at 5).  Even if true, those concerns do not excuse the discrimination.  *See Fair Housing Congress v. Weber*, 993 F. Supp. 1286, 1293-94 (C. D. Cal. 1997) (holding that defendants violated §§ 3604(a) and (c) by maintaining informal policy of not renting second-floor entry balcony apartments to families with small children).  To the contrary, as Plaintiff points out, regulations promulgated by the United States Department of Housing and Urban Development prohibit "assigning any person . . . to a particular floor of a building, because of . . . familial status . . . ."  24 C.F.R. § 100.70(c)(4).  Those regulations also prohibit "[c]ommunicating to any prospective purchaser that . . . she would not be comfortable or compatible with existing residents of a community, neighborhood or development because of . . . familial status . . . ."  *Id.* § 100.70(c)(3).  Accordingly, Defendants have offered no legitimate reason for refusing

to rent to Plaintiff.  Under these circumstances, the Court finds that Plaintiff is entitled to judgment as a matter of law on her § 3604(a) claim.

### ii.    Plaintiff's Claim under § 3604(c)

Under § 3604(c), it is unlawful to "make . . . any statement . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation or discrimination."  42 U.S.C. § 3604(c).  The prohibition with respect to statements applies to both written and oral statements.  24 C.F.R. § 100.75(b).  Moreover, a discriminatory statement includes expressing to a prospective renter "a preference for or limitation on any . . . renter because of . . . familial status . . . ."  *Id.* §100.75(c)(2).

In determining whether a statement violates § 3604(c), the Court asks whether the statement suggests to an ordinary listener that an unlawful discriminatory preference exists for the housing in question.  *Soules v. HUD*, 967 F.2d 817, 824 (2d Cir. 1992).  The ordinary listener hears the statement in context and is "neither the most suspicious nor the most insensitive of our citizenry."  *Id.*  "Openly discriminatory oral statements merit similarly straightforward treatment."  *Id.*

Plaintiff is entitled to judgment as a matter of law on her § 3604(c) claim.  Toombs' statement—that he would "not be able to rent to [her] because of [her] two small children," (Dkt. 22 at 7, 13-14)—plainly would suggest to the ordinary listener that Toombs had a preference against Plaintiff's tenancy because of her familial status.  *See Soules*, 967 F.2d at 824; *see also White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 906 (7th Cir. 2007) (finding no substantial evidence for administrative law judge's conclusion

that landlord did not violate § 3604(c) where landlord told prospective tenant that she would not rent to the prospective tenant immediately upon learning that prospective tenant was a single mother of two minor children). *Cf. United States v. Gilman*, 341 F. Supp. 891, 896-97 (S.D.N.Y. 1972) (finding that landlord's statement to white tenant that she should send her friends to see a vacant apartment but that she should "make sure her friends are whites" violated § 3604(c)); *United States v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1972) (concluding that rental advertisements stating that apartments are in a "white home" indicate a racial preference and therefore violate § 3604(c)).

As with Plaintiff's claims under § 3604(a), there is no issue of fact that Toombs made these discriminatory statements to Plaintiff. Although Toombs now proffers purported safety concerns and concerns over compatibility with an elderly neighbor as the basis for his statements, any such motivation is irrelevant. Toombs' statements, in and of themselves, are enough to trigger liability under § 3604(c), because the intent of the speaker is not determinative of liability. *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 53 (2d Cir. 2015) ("Subsection 3604(c) prohibits all ads that indicate a disallowed preference to an ordinary reader whatever the advertiser's intent." (quotations and alterations omitted)). Accordingly, summary judgment in favor of Plaintiff is appropriate on this claim.

## III. Conclusion

Accordingly, Defendants' motion to dismiss (Dkt. 41) for lack of standing is denied, and Plaintiff's motion for summary judgment (Dkt. 20) is granted in part on the

issue of liability for discrimination in violation of 42 U.S.C. §§ 3604(a) and (c) based on

familial status, and it is otherwise denied.

     SO ORDERED.

                                     _____
                                     ELIZABETH A. WOLFORD
                                     United States District Judge

Dated:       September 30, 2016
               Rochester, New York